IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

Robert Edward Eaton,              :
                                  :
        Plaintiff,                :
                                  :
    v.                            :    Civil Action No. 01-733-JJF
                                  :
Correctional Medical Systems,     :
Inc., et al.,                     :
                                  :
        Defendants.               :

---

John L. Reed, Esquire and Joseph B. Cicero, Esquire of EDWARDS ANGELL PALMER & DODGE LLP, Wilmington, Delaware.

Attorneys for Plaintiff.

Eileen Kelly, Esquire and Marc P. Niedzielski, Esquire of DEPARTMENT OF JUSTICE, CIVIL DIVISION, Wilmington, Delaware.

Attorneys for Defendants Robert Snyder, Frank Kromka, Thomas Carroll, Jane Morgan, Lisa Merson, and Elizabeth Burris.

Stephen J. Milewski, Esquire of WHITE & WILLIAMS, Wilmington, Delaware.

Attorney for Defendant Prison Health Services.

Eric S. Thompson, Esquire and Kevin J. Connors, Esquire of MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, Wilmington, Delaware.

Attorneys for Defendant Correctional Medical Systems.

---

**MEMORANDUM OPINION**

September 17, 2007
Wilmington, Delaware.

**Farnan, District Judge**

Pending before the Court is Defendant Correctional Medical Services' Motion To Dismiss (D.I. 161) and Defendant Prison Health Services, Inc.'s Motion To Dismiss (D.I. 162). For the reasons discussed, the Motion of Correctional Medical Services will be denied, and the Motion of Prison Health Services will be granted.

I.  **BACKGROUND**

Plaintiff, Robert Edward Eaton, is an inmate at the Delaware Correctional Center ("DCC") in Smyrna, Delaware. Defendant Correctional Medical Services ("CMS") provided medical services at DCC from July 1, 2000, through June 30, 2002, and again from July 1, 2005, to the present. Defendant Prison Health Services ("PHS") provided medical services at DCC from July 1, 1996, through June 30, 2000.

On November 9, 2001, Plaintiff filed his original Complaint pro se under 42 U.S.C. § 1983 against Defendant Warden Robert Snyder alleging that Snyder violated his civil rights by confiscating his legal materials for another action and moving him to the Secured Housing Unit ("SHU"). (D.I. 2). On November 8, 2002, Plaintiff filed his First Amended Complaint adding several defendants, including CMS and PHS, and alleging that he received inadequate medical and dental care and was exposed to environmental tobacco smoke. (D.I. 22). Service of the First

1

Amended Complaint was attempted by the U.S. Marshal but was returned unexecuted because Plaintiff did not include the addresses for the medical provider defendants on the Marshal's forms for service. (D.I. 47, 49).

On November 14, 2005, in response to Plaintiff's Renewed Motion for Appointment of Counsel, the Court issued an Order requesting representation for Plaintiff. (D.I. 108). Plaintiff obtained representation on March 15, 2006. (D.I. 114). On December 18, 2006, the Court granted Plaintiff's Motion for Leave to File An Amended Complaint and for Leave to Add Certain Defendants. (D.I. 139). On December 18, 2006, Plaintiff, through his counsel, filed his Second Amended Complaint which added certain defendants, including CMS and PHS, and added allegations that Defendants refused to reveal for one year that he had tested positive for Hepatitis C and failed to provide him with the necessary treatment, causing the disease to worsen (D.I. 140).

## II.  LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all allegations in the complaint and must draw all reasonable factual inferences in the light most favorable to the plaintiff. Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). The Court is not required to accept legal conclusions alleged or inferred from the pleaded facts. "[O]nce

a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1969 (2007).

## III. DISCUSSION

### A. Failure To Timely Serve The Complaint

By their Motions, CMS and PHS contend that the Court should dismiss Plaintiff's Complaint because Plaintiff failed to serve them with the First Amended Complaint. CMS and PHS contend they were not served until Plaintiff filed his Second Amended Complaint on December 18, 2006.

The Court granted Plaintiff leave to amend his Complaint and add CMS and PHS as defendants because Plaintiff had been unable to effectuate service of his First Amended Complaint while still a pro se litigant. The record indicates that, after the Court granted leave to amend, Plaintiff served the summons and Second Amended Complaint (D.I. 144) within 120 days, on December 28, 2006, pursuant to Fed. R. Civ. P. 4(m). Thus, the Court concludes that CMS and PHS have suffered no prejudice as a result of any delay in service by Plaintiff, and therefore, the Court will deny the Motions on this ground.

### B. Statute Of Limitations

By their Motions, PHS and CMS next contend that Plaintiff's claims are barred by the two-year statute of limitations period

3

that governs this action pursuant to 10 Del. C. § 8119.  In response, Plaintiff contends that the two-year statute of limitations does not bar his claims because the failure of PHS and CMS to provide adequate medical care is ongoing, and therefore, under the continuing violation doctrine, the statute does not begin to run until the last act of harm on the continuum of medical treatment.  Plaintiff also contends that his claims against PHS are not time-barred because the Second Amended Complaint relates back to the original Complaint which was filed on November 9, 2001.

Plaintiff's Section 1983 claims are subject to the statute of limitations governing personal injury actions under Delaware law.  Owens v. Okure, 488 U.S. 235, 240-41 (1989).  In Delaware, the applicable statute of limitations for personal injury claims is two years.  See 10 Del. C. § 8119.  Thus, claims not filed within the two-year limitations period must be dismissed, unless the limitations period is tolled.

Under the continuing violation doctrine, a plaintiff can pursue his Section 1983 claims based on conduct that began prior to the limitations period, if the plaintiff can show that the conduct is part of an ongoing practice.  Dobrich v. Walls, 380 F. Supp.2d 366, 375 (D. Del. 2005).  To determine whether the continuing violations doctrine can be applied, the Court must consider: (1) whether the complaint alleges any violations within the limitations period, and (2) whether the conduct is reasonably related to conduct that occurred within the limitations period.

4

West v. Philadelphia Electric Co., 45 F.3d 744, 754-55 (3d Cir. 1995). To establish the second prong of this test, a plaintiff must demonstrate that the action is not an isolated occurrence, but part of a consistent, on-going pattern. Id. at 755.

In his Second Amended Complaint, Plaintiff alleges that he was denied medical treatment and given inadequate treatment in the two-year period preceding the filing of the Second Amended Complaint. CMS provided medical services at DCC during that two-year time period. Plaintiff also alleges that he received inadequate care or was denied care outside of the two-year period, beginning as early as 1997, but also at a time when CMS was the medical provider. The Court concludes that the conduct alleged to have occurred outside the limitations period is reasonably related to the conduct alleged to have occurred during the two-year time period. Thus, viewing the Complaint in the light most favorable to Plaintiff, the Court concludes that Plaintiff's allegations are sufficient to establish the type of ongoing and continuing pattern needed for application of the continuing violation doctrine with respect to CMS. Thus, the Court will deny CMS' Motion To Dismiss based on the statute of limitations.

With respect to Plaintiff's claims against PHS, the Court concludes that the continuing violation doctrine is not applicable because PHS terminated its medical services at DCC on June 30, 2000, and no claims against PHS arose from conduct occurring within the two-year period before Plaintiff filed his

5

Second Amended Complaint. Thus, the Court must determine whether the Second Amended Complaint relates back to the filing of the original Complaint for purposes of the running of the statute of limitations. An amended complaint which adds a party will relate back only if three conditions specified in Federal Rule of Civil Procedure 15(c) are satisfied. Garvin v. City of Philadelphia, 354 F.3d 215, 220 (3d Cir. 2003). Those conditions are: 1) the claim arose out of the same conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading; 2) the newly named party received such notice of the institution of the action within 120 days of the complaint so that the party will not be prejudiced in maintaining a defense on the merits; and 3) the newly named party must have known or should have known within 120 days that, but for a mistake made by the plaintiff concerning the newly named party's identity, the action would have been brought against the newly named party in the first place. Singletary v. Pennsylvania Dept. Of Corr., 266 F.3d 186, 189 (3d Cir. 2001).

Here, PHS contends it was not given notice of the action within 120 days of the original filing on November 9, 2001. PHS was not served with Plaintiff's Second Amended Complaint until 2006. Thus, there is no indication in the record that PHS received actual notice of this action. However, under Rule 15(c)(3), notice does not require actual service of process on the party sought to be added and notice can be actual, constructive, implied, or imputed. Id. at 195. Notice may be

imputed through the "shared attorney" or "identity of interest" methods. Id. at 196-97. Because PHS does not share an attorney with the original named defendants, the shared attorney method is not applicable here. The "identity of interest" method imputes notice to a newly named party where "the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." Id. at 197 (quoting 6A Charles A. Wright et al., Federal Practice And Procedure § 1499, at 146 (2d ed. 1990)).

The Court concludes that, because PHS ceased to provide medical services at DCC in June 2000, PHS was no longer in a business relationship with DCC or the Department of Corrections at the time the original or First Amended Complaints were filed. Further, even if PHS did have a sufficiently close relationship with the named defendant, PHS could not have been aware that it should have been a named party because Plaintiff's original Complaint did not allege claims relating to inadequate medical care.[1] Thus, the Court concludes that Plaintiff's Second Amended Complaint does not meet the notice requirement necessary for

---

[1] Plaintiff's Original Complaint named Robert Snyder, then Warden of the DCC as a Defendant and alleged that Snyder wrongfully confiscated his legal materials.

7

relation back to the date of filing of the Original Complaint.[2] Accordingly, the Court concludes that Plaintiff's claims against PHS are time-barred by the two-year statute of limitations, and therefore, the Court will grant PHS' Motion to Dismiss.[3]

   C.   Exhaustion Of Administrative Remedies

CMS also contends that the Court should dismiss Plaintiff's Complaint because Plaintiff did not exhaust his administrative remedies. Specifically, CMS contends that Plaintiff did not file appeals to his grievances and the Grievance Committee has not yet rendered a decision on other grievances. In response, Plaintiff contends that he filed numerous grievances and appeals, but is uncertain as to whether he has exhausted his administrative remedies because he does not possess all documents concerning the Grievance Committee decisions.

The Prison Litigation Reform Act states that "no action shall be brought with respect to prison conditions under Section 1983 by a prisoner in any jail, prison or other correctional facility until such administrative remedies as are available are

---

[2] Even assuming arguendo that the circumstances of the filing of the First Amended Complaint were sufficient to warrant relation back, Plaintiff's claims would not be saved by the continuing violation doctrine because no conduct involving PHS arose within the two-year period prior to the filing of the First Amended Complaint.

[3] PHS bases its Motion To Dismiss on several other grounds. Because PHS's Motion to Dismiss will be granted on statute of limitations grounds, the Court will not discuss PHS's additional contentions.

exhausted." 42 U.S.C. Section 1997(e)(a). "Prison conditions" relate to the nature of the services provided in the prison and, specifically, medical services fall under the statute. <u>Booth v. Churner</u>, C.O., 206 F.3d 289, 291 (3d Cir. 2000). The exhaustion requirement is absolute, unless no administrative remedy is available. <u>Riley</u>, 2006 U.S. Dist. LEXIS 88661, at *12. Additionally, a Section 1983 prisoner complaint should not be dismissed for failure to exhaust administrative remedies when the record indicates that plaintiff filed a grievance that has been ignored by prison authorities beyond the time allowed for responding to grievances under the grievance procedure. <u>DeJesus v. Williams</u>, 2007 U.S. Dist. LEXIS 29980, at *7-8 (D. Del. 2007).

In his Second Amended Complaint, Plaintiff alleges that he has filed numerous grievances with respect to his concerns about inadequate medical care with prison officials and directly with the medical providers. Plaintiff further alleges that he has filed appeals where necessary. Construing the Complaint in the light most favorable to Plaintiff, as it must do at this juncture, the Court concludes that Plaintiff has exhausted his administrative remedies. Accordingly, the Court will deny CMS's Motion to Dismiss based on exhaustion of administrative remedies.

D. <u>Failure To State A Claim</u>

By its Motion, CMS contends that Plaintiff has failed to state a claim for which relief can be granted, because it cannot be held liable under the theory of respondeat superior in an action under the Eighth Amendment. Specifically, CMS contends

9

that Plaintiff has alleged no facts in the Complaint to prove that CMS exhibited deliberate indifference to Plaintiff's medical needs through a custom or policy denying or providing inadequate medical care to Plaintiff. In response, Plaintiff contends that CMS is liable under the theory of respondeat superior because CMS knew of its employees' indifference to Plaintiff's medical needs and failed to correct the practice.

In order to state a claim under the Eighth Amendment for failure to provide adequate medical care, an inmate must allege deliberate indifference to serious medical needs constituting "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104 (1976). When a plaintiff relies on a theory of respondeat superior to hold a corporation liable, he must allege a policy or custom that demonstrates such deliberate indifference. Miller v. Correctional Medical Sys., Inc., 802 F.Supp. 1126, 1132 (D. Del. 1992). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." Estelle, 429 U.S. 97 at 104-05. In order to establish that CMS is directly liable for the alleged constitutional violations, Plaintiff "must provide evidence that there was a relevant [CMS] policy or custom, and that the policy caused the constitutional violation [alleged]." Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003).

In his Second Amended Complaint, Plaintiff alleges that he has experienced inadequate dental and mental care and/or the

10

denial of dental and medical care over the course of his incarceration beginning in 1997. Plaintiff alleges that his dental and medical problems have been exacerbated by the inadequate and delayed treatment. Plaintiff also alleges that he has filed numerous grievances directly to the medical providers to notify them of his condition and that his concerns were ignored and his treatment delayed. The Court concludes that, at this juncture, Plaintiff has adequately alleged a policy or custom of ignoring complaints and delaying treatment. Therefore, CMS's Motion To Dismiss for failure to state a claim will be denied.

IV. CONCLUSION

For the reasons discussed, Defendant PHS' Motion To Dismiss will be granted and Defendant CMS' Motion To Dismiss will be denied.

An appropriate Order will be entered.